Good morning and may it please the court I'm James Laughlin and I represent the appellant Nathaniel Newhouse. With the court's permission I'd like to reserve three minutes of my time for rebuttal. A group of agents swoop in and block a suspect's car with their own vehicles and then approach with guns drawn and issuing commands. Is that seizure and arrest requiring probable cause or does it fall within the limited and narrow exception to the Fourth Amendment's probable cause requirement allowing for brief and limited stops for further investigation? This court answered that question nearly 40 years ago in United States v. Strickler. Under facts nearly identical to those presented here, the court held that the driver of the car in that case was under arrest before the agent or the police officer even reached the window of his car. Mr. Newhouse was likely and likewise under arrest before DEA agent Strapple reached the window of his car. This conclusion is required by the court's more recent case law as well. Why don't we assume that there was probable cause? That probable cause was required? That there was an arrest at the time of the stop? I'm sorry, I didn't catch your question. Can we just assume for a moment that there was an arrest and that probable cause was necessary? Why isn't there sufficient facts here to show that the officers had probable cause? Because at that point, Your Honor, at best what the agents had was the fact that they saw a white bag that may or may not have been from B&B Pharmacy given to Mr. Newhouse and that that white bag may or may not have contained prescriptions and that if there were prescriptions in there, they were presumably gotten to something, some kind of prescriptions that were suspicious in some undefined way. Well, they knew more than that, didn't they? The collective knowledge of the officers that were involved, they knew quite a bit. Is Your Honor referring to the prior investigation? No, they had gotten information from the pharmacist at the pharmacy before they, before the stop. They got information, we don't know anything more than it was suspicious and I think at the evidentiary hearing that was flushed out a little bit more than said there will seem to be a lot of OxyContin prescriptions. They had the call from the pharmacy? Yes, yes. But again, we don't know the details of why they were suspicious except for, hey, there seems to be a lot of OxyContin. Certainly, that gives the DA reason to go there and look around and what they did is saw a few people fill prescriptions and then... Multiple prescriptions of not only OxyContin but other, but there was another drug as well, I forget what it was. Dilaudid. Dilaudid. Yes, and the government argues on that there's no reason to have those two drugs at the same time but there's no evidence in the record to support that fact. There's no way that... Well, you're dealing with, you know, with drug agents who seem to be fairly familiar with all these drugs. But I don't think we can assume when the agent submits a declaration and testifies under oath and never says what the government says on appeal which is part of the reason this was suspicious is because I know from my experience that Dilaudid and OxyContin are not prescribed at the same time for chronic pain. I don't think it's a reasonable conclusion to draw to assume that that's a fact. So you're saying that while the agent can put that knowledge in in front of the court, that doesn't necessarily mean that the agents on the ground at the time had that knowledge? Yes. Well, I'm saying that the agents even at the time of the suppression hearing didn't make that argument. They didn't make the argument... They didn't testify to that. Correct. That's what you're saying. Again, what they said was the declaration itself is very vague. It just says there were suspicious prescriptions. At the evidentiary hearing it was said, well, it's suspicious because there seemed to be a lot of OxyContin prescriptions. Again, maybe that gives us a DEA reason to go and spend some time at the pharmacy to find evidence supporting a probable cause finding down the line. Again, to establish probable cause, which is the government's burden under the Fourth Amendment, it has to be enough evidence in the end for a cautious or prudent person to believe that at that point Mr. Newhouse was engaging, actually engaging in drug trafficking. And I don't think even if the evidence in the record was sufficient to get over the reasonable suspicion standard, the probable cause standard is much higher. It can't be a hunch. It has to be something that... It has to be a fair probability. Correct. So, can we rely on the collective knowledge of the agents? I guess one or two remained at the pharmacy, and then a few others followed the individuals who had just gotten the prescriptions to the Winchell's where they watched this exchange. Yes, Your Honor. You can... The collective knowledge of the officers may be considered to the extent that we're looking at what their collective knowledge was at the moment of arrest. And so therefore, all of the observations on February 5th up until the moment of arrest can be Okay. Do you want to address the Batson issue as well? Oh, certainly. As the court knows, obviously, if the court doesn't need to reach the Batson issue if it rules on the suppression issue, and of course, even if it finds there's a Batson error, it would still have to reach the suppression issue anyway because that would affect any retrial. But... Because the juror that was struck was the sole African-American juror and Newhouse was African-American, correct? Yes. Okay. Yes. Only step three of Batson is that issue here. At that stage, the district court clearly erred in finding that the government did not engage in purposeful discrimination when it struck the only African-American juror from the panel. The totality of the circumstances established to the government's three proffered reasons for the strike were pretextual. The district court itself unequivocally rejected one reason, that the juror was supposedly confused when it found the juror was not disoriented in any way. And moreover, I think when you look at the transcript, the tenor of it is that the court really didn't believe the government. It didn't make this express finding, but it seemed to find implausible the government's insisted claim that because the juror misremembered her number a couple of times, that was a legitimate reason to knock her out. How long was the trial anticipated to be? I don't remember what the estimates were up front. It ended up being a little over two days and I think that the estimates were in line with what it ended up being. So one of the reasons that I think was given for the pain medication being legitimate was that the trial would go for a week and the witness, the juror, had said that she needed to use the medication once a week. I think that was an estimate. She said that the last time she had used medication was about a week ago and I think that the district court extrapolated that into, okay, maybe you need to use it once a week. And it's clear that the district judge, you know, did everything he could to accommodate that witness. He didn't say you can't take the medication. What he told the, I'm sorry, the juror was, you know, if you're a juror on this case, A, you can stand up to exercise your back whenever that need arises. I don't want you taking medications that will affect your ability to examine the evidence while this case is going on. And then he told the parties, if it comes to that, if the juror ever said, yes, I need to take this medication, we then have alternates that can come in and take over. And I think that was a very legitimate and accommodating... Does the government have to accept that accommodation? I don't... I mean, that would be, standing by itself, that would be a neutral reason, I think, to strike a juror, somebody who has a need to take medication. I think it would be but for the district court's very reasonable plan to deal with that situation. And at least in the court below, the prosecutor never responded to what the judge said to say, well, Your Honor, I don't think that's adequate because. And therefore, I think the question in Step 3 of Batson is not whether this reason could have been legitimate, but do the totality of the facts show that this was the legitimate reason that the prosecutor had. So the government offered another reason as well? Yes. It offered the so-called bias of the juror against police officers. And there's several factors that come into play when examining that. The first is that the first two, certainly the first one about jury confusion, and I argue the same thing is true about the back issue, those are very weak, seemingly pretextual issues. And once you have one or more issues of pretext, then that creates a presumption that any other offered reasons are pretextual as well. So that third reason needs to be examined in that vein. The second thing is that the case is very similar to the case of McLean v. Prunty, which is cited in the brief. What the juror actually said was, you know, to summarize, I used to have these feelings, but I can be impartial now, which was somewhat similar to what the juror in McLean said, which was, my son had a legal issue. At first I thought they treated him badly, but then I came to think otherwise. The way the government was characterized that was, she has a present bias against police officers. And I don't, and then in its brief, it kind of backed away from that saying, well, it's unclear on that point where the juror said it was unclear. I don't think it is unclear. I think that the juror was clear that I used to have these feelings, and I have no problems with bias in this case. And I think that's a compelling factor that the government felt the need to mischaracterize the statements in that way to make its point suggests that that's a pretext as well. There's also the fact that the court – Does the government have to accept that later statement? Does the government? Yeah, when they're exercising their peremptories. No, Your Honor, they don't. But, again, it's not – the issue here is not whether someone could give this reason as legitimate reason for the strike. The issue is whether the totality of the facts suggest that this was not the prosecutor's real reason for the strikes. And one of the factors is that what the government said was mischaracterizing what the juror said. If they had gotten up there and said, well, you know, I know she said that she can be unbiased now, but I'm really concerned about the fact that she was biased in the past, then that would be a much different situation. But what it did is it tried to twist what the juror said to make its case stronger. And, again, I think that's a – one of the factors that come into play to show – You know, this whole scenario is kind of interesting, what happened here, because initially the judge – I think the judge said that he was going to – he was not going to excuse the juror. So then the government said, well, are you finding that we engaged in improper – we had an improper motive, that we engaged in – we violated BATS and whatever. They wanted him to clarify what he was doing. And then he said, no, I don't find that there's any improper motive here taking place. What do we do with that? Well, I do think – I mean, would he – would we have to find that the facts are clearly – that his implicit factual findings are clearly erroneous? What do we do with his statement? Well, I mean, I think that the fact that the government or the court really shifted gears after the prosecutors complained about the consequences of its initial ruling does require the court to look closely at this. I think the standard of review is – That's the part that bothered me. I think we should – what exactly did the – it said something like, we're going to have to report this. To our office. To our office. What is that all about? I only know it's on the transcript. I read it to mean that a – that the U.S. Attorney's Office takes BATS and violations seriously, and if they're – somebody's accused of – or found to have improperly made a perimphery under BATS, and then they have to report that for possible disciplinary proceedings. Right. But that should not be part of the district court's reason. I mean, if the court makes that finding, I agree, Your Honor. I think that it seems like the court modified its decision on the basis of the fact that the court had made a perimphery   under BATS, because of the concerns about how it would affect the individual prosecutors. And I think that its first inclination, which was to grant the BATS in motion, was the correct one. I see that I'm down to four seconds. Okay. Thank you. He said the judge then – he says, I don't think you've made a BATS in violation, is what he told him. Correct. After just granting the BATS in motion, which requires a BATS in violation. Great. Good morning, Your Honors. May it please the Court, Benjamin Behrens, United States. Also present with me in the courtroom is AUSA Jennifer Williams. She and I were And I want to begin by focusing, Your Honors, on two facts that I think are very important facts here. The first is that throughout the jury selection process, both for the four-cause challenge and the peremptory challenges, the defense attorney maintained consistently that the government was not acting with a racial motive or an improper motive. The defense attorney said he is not accusing the prosecutors of being racial. That's at Excerpt 258. The defense attorney said he was not accusing the prosecutors of any immoral or any unprofessional conduct. That's at 254. And during the four-cause challenge, when the judge did not grant the four-cause challenge, the defense attorney went so far as to say, of course, the government can exercise a peremptory. That's at 245. And the reason that's important is because that puts this case pretty squarely on point with the Boyd case. In the Boyd case, you have a similar situation where there was one juror remaining of a certain race in the veneer, and the defense attorney expressly said that the government was not acting with a racial motive, and the defense attorney said that the Court should put the juror on the panel because the interest in making sure that there was that person of that race on the jury. And this Court found that as a matter of law, that was insufficient. And as a matter of fact, there are three cases, the Collins case, the Vasquez case, and the Boyd case, which all address situations when there is one person of a certain race on the veneer, and they said as a matter of law, the fact that there is that one person of the race, of that race, does not create a Batson issue. We need something more. The defense attorney didn't present more. The defense attorney presented only the need to put that person on the panel, and that isn't enough as a matter of law. The second fact that I want to emphasize for Your Honors is that a comparative analysis is possible here. Judge Pragerson asked the jury, does anybody have any negative feelings towards law enforcement or negative experiences? Three of the panel members, veneer jurors, answered that question, talked about past experiences. And in fact, all three said they could be impartial at trial. The government struck all three. It used three of its four peremptories that it used on those jurors, both black and nonblack. And I emphasize that because the facts in this case certainly support the judge's finding that there wasn't a racial pretext. And I need to emphasize that the question is, was there a racial pretext for the government's strikes, not whether the government was right or wrong strategically, not whether the juror would be able to stand through trial without needing her medication, or whether she could be impartial despite her stated past negative experience, just whether there was a pretext. And this record shows that there was no pretext. So what do you make it – so what was the judge up to when he said, I'm not going to – I'm not going to excuse? Yeah. Was it juror 20 – was it juror 27? That's correct, Your Honor. The judge was – What was going on there? The judge was clear on why the judge denied the peremptory at first. And I'll quote what the judge said. I'm just concerned about striking the only African-American juror. I'm not accusing the government of being unfair in any way in this case. I just don't feel comfortable about doing it given the limited veneer in this case. So that's my ruling. And again, there are three distinct cases that say that just because there's one person of a certain race in the veneer, that doesn't support a finding of a Batson violation as a matter of law. So the district court was relying on the interest in seeing this person on the panel despite the concerns about the back medication causing confusion and concerns over the juror's negative experiences with law enforcement. Counsel, what was the purpose of informing the court that if a Batson determination was made that it would have to be reported? What was the purpose of that? Because the court – the court denied the government's peremptory challenge based on – not on a Batson violation from – apparently, but on the need to put this person on the panel. And so the government needed clarity for the sake of our own internal process, if nothing else. But to get clarity, you didn't have to inform the court that you would have to report it if a Batson determination was made. All I can say, Your Honor, is that we felt it necessary to clarify what the court's ruling was. If it was improper to inform the court why the government was particularly concerned about whether a Batson violation was made, I mean, if that was improper, then, you know, obviously that was improper. I don't feel it was. But in any event, when you look at this record, I don't believe it factored into the analysis of the court, particularly because the court found the government credible, particularly because even the defense said that the government was being credible and did not have a racial motive. And I have to emphasize again, the Boyd decision says that on these facts, there was no Batson violation as a matter of law. So – And it seems as though we have some very nice people, both the defense counsel and Judge Pragerson, who don't want to necessarily get certain individual prosecutors into trouble with their office. And so they – after the prosecutor made – you made that statement, that's when Judge Pragerson and the defense counsel kind of back off and not – you know, they – they find this – first of all, your first – the judge found your first proper reason, the disorientation pretextual. He said, no, I don't see – you know, she misremembered her number a couple times. I don't think that's a reason. And then you could read this transcript to find your second one pretextual because the judge is saying, no, this is not going to be a problem. We can figure out how to deal with her need to take medicine. We can handle that. And in fact, there was only a two-day trial. So, you know, that very well could have been handled the way the judge thought. The third one, you mischaracterized what the witness – what the juror had said when you gave your proper reason. You raised the issue of bias. But in fact, she just said, you know, I have two brothers who was into drugs, and I don't think I would have a problem. At one time, I was thinking about sometimes the police get black young guys, but I don't know. It was after. So I cannot say they didn't do the drugs. So she's – what she's saying is the – in a way, what she's saying is I'm not biased because my brothers were guilty. So it wasn't – they weren't after my brothers just because they were black. They were actually guilty. Your Honor, your Honor raised a few distinct points there, and I want to address all of them. They're all supported by our case law. The first point I want to raise is that I would submit Judge Pegerson is an experienced judge. Like all judges, he's charged with applying the law. He looked at his own bench book at the law regarding a Batson violation and applied that law. And I would submit that – I would submit he knows the law of Batson. I don't think he would even need to look at the bench book. Correct. And he made a finding. He made an initial finding and then changed it. The point I'm making is, you know, whether the government expressed why it was asking about the Batson violation or not, I would submit didn't materially, if influenced at all, the judge's decision. It just raised the issue of the need to know the basis. And I also want to note – I have to say I have on occasion taken the word misconduct out of an opinion, amended it, because, you know, I didn't want to ruin an AUSA's career. But, Your Honor, it didn't change your ruling. You just took a word out of the ruling. Well, he did change his ruling because his initial inclination was to find a Batson violation, and then he backpedaled on that. The judge changed his ruling when the government made it clear that there was a need to find a pretext to grant the Batson violation, which wasn't present here, at which point the parties addressed that issue, and the defense attorney wasn't able to provide any fact-supporting pretext. I mean – Well, I'm sure that your representation to the court that it would have to be reported to the court to make sure that it raised the stakes a little. Regardless of whether it raised the stakes a little, I would submit it didn't. But even if it did, the fact is the judge made his ruling and it wasn't clear error. It wasn't clear error because what the defense attorney submitted was as a matter of law not sufficient to grant the Batson challenge. And in any event, it wasn't sufficient to – Yes. So I guess your argument is that when he made that initial determination to not excuse the juror or to knock her off the jury, that there wasn't an adequate legal basis to do that. Correct. The judge by – expressly was not putting – rejecting the peremptory based on any kind of racial animus, which is what's required for a Batson violation. The judge just wanted to see this person on the panel, which isn't permitted as a matter of law. The government is entitled, just as the defense, to use its peremptories, and the only limitation is that it not have a racial motive in doing so. And I want to – Of course. That's why we're here. Yes, Your Honor. And so my point is that the judge didn't rely on a improper racial pretext in rejecting the peremptory at first. The judge said explicitly, I just want to make sure this person is on the panel, and that isn't enough. I've cited three cases that have addressed this exact situation. All three cases have made it clear that it's not enough just that there's one person of a certain race on the panel. And I want to address something, Your Honor. Well, I mean, that's not the case here. It's not as if there's nothing else in the record except the bare fact that there was only one African-American in the jury pool. That's not the case we have. So that's not really persuasive in terms of the facts that we have here, because that's not the same situation. Your Honor, here's what I mean when I make that point. Once the parties began to engage in the three-step Batson challenge, the district court turned to the defense counsel and expressly asked defense counsel, well, if you believe there's a racial pretext, what are those reasons? And in Exits Record 254 to 255, the defense attorney made it clear that he's not accusing the prosecutors of being racial or compatible. He just wants to make sure that, quote, the only representative of my client's community would be on this panel. That was the reason the defense attorney proffered when directly asked by the court, what is the reason for the pretext? All of these reasons that are now being raised on appeal weren't raised below. And as a matter of fact, even the defense attorney recognized that there was no racial pretext here. And as in Boyd, that fact demonstrates as a matter of law that the district court's finding was correct. But in any event, it was not clear error on this record. And I just want to note that the mere fact that the district court disagreed with the conclusion reached from the facts and didn't want to consider the jurors' confusion about her number doesn't mean the district court found pretext. There is a whole difference between not agreeing with the government on the merits of one of its reasons and finding that the government acted with a racial pretext. He's saying the record doesn't support that she was disoriented. He's saying what happened, I saw it, too, does not support what you're saying, which is saying that that's not a valid reason. So that, you know, which is essentially a finding of pretext. It's a reason not supported by what's happened in the proceeding. It was merely a disagreement about the assessment of the facts. That's different than saying that the government acted with a racial motive. Okay. If that were the only reason that was proposed by the government for striking this juror, and the district court said, I don't agree with that, would there be a likely finding of pretext at that point? I want to point Your Honor's attention to the Collins case. Well, could you answer my question first before you answer? The answer is if that was the only reason and the court found pretext based on that reason, then perhaps. If the court disbelieved the reasoning, reason that was given by the government, what other choice is there but to find pretext? Because that's the purpose of step three. Perhaps the court would if the court made the further finding that the government not only was wrong as a strategic matter or in its reading of the juror's demeanor, but was acting with a racial animus. That's a separate factual finding required for Batson. And in the Collins case. Now, let me ask you a question about racial animus. The government, if the government was acting because it wanted to keep the sole African-American juror off this as a strategic matter, you know, someone who, I mean, someone who, you know, was from that community and had experience with police. And but as a strategic matter, it just didn't want that juror in there. Does that equal racial animus? That would be trying to keep the juror off because of race. But that isn't what happened here, Your Honor. The government treated this juror the same as it treated all three jurors who answered that they had had past negative experiences. You didn't make that argument. That argument isn't before Judge Prayerson. I apologize, Your Honor. I mean, was that – that wasn't one of the reasons given to Judge Prayerson. Yes, it was, Your Honor. The government cited three reasons to Judge Prayerson, that she expressed negative concerns about law or past negative experiences, that she has to take medications that cause her to feel confusion or that she feels extreme pain, and that the government's argument regarding the juror number. And I have to emphasize, Your Honor says that the government mischaracterized the record. Well, I don't believe that's true. I have to note that the judge, the defense attorney, and the government all characterized the juror's statements in the same way. It wasn't as though, you know, the government was taking everything out of context. All three read the juror as saying that she's had past experiences of her family, of the police. Well, I think we're seeing current experiences of that right now. I don't understand, Your Honor. Well, if you read the – look at the newspaper every day, you see all these young, innocent black men being shot by police. I mean, I don't know if that seems to me kind of a – and she even, you know, backed off of that. The question is, was there pretext in this case, was it clear error to find that there was no Batson violation and it wasn't clear error, Your Honor? I can't speak for what happens outside of the Court. You've got 30 seconds. Do you have anything to say about the other issue? Yes, Your Honor. And I think, Your Honor, Judge Pius honed into exactly the right issue, which is you don't even need to get into the Terry Scott issue because probable cause existed. And I can provide the 30-second explanation of why that is. Do it. Okay. B&B Pharmacy provided the Drug Enforcement Administration with information that there had been a sudden spike in OxyContin prescriptions, particularly from one doctor, Dr. Sanchez. Based on that information, a team of diversion investigators, that is, investigators trained specifically to investigate these crimes, went to the pharmacy. They know what a drug deal looks like. They know that people fill prescriptions for these drugs and then deliver them to drug dealers. But they didn't put that in the affidavit, though. It wasn't there at 88 to 89, Your Honor. It's in there. And so what happens? They go to the pharmacy to do surveillance, and they see exactly what the pharmacy had provided them information of, and they knew – saw exactly what they knew to be a drug deal, which was three people going into the pharmacy, filling identical prescriptions for two Schedule II controlled drugs that are powerful, addictive drugs sought by drug dealers. They filled those prescriptions. They were written by the same doctor, the doctor who was behind that spike. And in fact, one of them had been one of the people filling prescriptions behind the spike, and two others had prescriptions that they didn't even present. And then a fourth person who didn't fill prescriptions took them to a car, drove 14 miles away to a parking lot, where in the evening they waited for an hour until the defendant arrived, and that fourth person delivered a white pharmacy bag to the defendant. When you take into account the information provided, the training and experience of the agents, and the facts that they observed, there was a fair probability that a crime had occurred. And because of that, the entirety of the defendant's Fourth Amendment claim is mooted. And so, I mean, it was a tarry stop as well, but you don't even need to go there. Is there any information in the record about how much those drugs are worth on the street? Your Honor, there are two answers to that. The one is that the agent noted at 88 that it was they were valuable drugs. Right. Now, I don't really want to open this door, but at trial, there was a whole long line of explanation about the value. And the trial testimony, there's clear law saying you can consider it as supplementing the record in this case. And the trial testimony provided detailed descriptions of the modus operandi of these deals, the value of these drugs. And if Your Honors feel that it's necessary to turn to that trial testimony, I would look at Investigator Herkert's expert testimony at the end of the second day of trial. She testified twice, once as a fact witness, once as an expert. And you'll see extraordinary detail about what her training experience was and what the modus operandi of these dealers are. It was more extensive at trial than it was in the affidavit, for sure. Correct. And that's Rocha 387F2nd 1019 at 1021 is where this court expressly said you can consider the trial testimony. I don't think you even need to. But if you want to see more detail, it's right there. Okay. Thank you, Your Honors. Thank you, counsel. I will give you a minute or so. I just want to address two points. The first is the government's contention that arguments made by defense counsel somewhat undercut his Batson claim below. And I want to point the court to this court's decision in United States v. Alanis where it said unequivocally that once somebody makes a Batson motion, then it's up to the district court to go through all three steps of the Batson process and that it requires no further arguments from counsel whatsoever. And I think that Judge Wardlaw touched on the right point. You mean so all counsel has to say is, Your Honor, I think there's a Batson violation? Under Alanis, yes. That requires the court. And then he can remain silent. Yes. Under Alanis, I think. Even though the judge might ask counsel, well, do you want to say anything? Do you want to offer anything? Yeah. I don't know whether Alanis has been addressed in issues where there's been direct questions asked, but I would say that the reason Alanis applies is that the burden is really on the district court once the Batson motion is made. And it's their responsibility to look at the evidence as a whole. Well, if it's the burden on the district court to make a fair determination, the district court needs information in order to make that determination, right? So he turns to the government. What do you have to say for yourself? Correct. That's step two. Right. But is it your argument that if the defense counsel offers something gratuitously that the district court is to disregard that? No. What I'm saying is that I was about to say that I think that what was suggested earlier is correct. Making a Batson motion is difficult because you want to maintain the cordial nature of the trial community as much as possible. And I think that although we all know, we're all trial judges. We all understand the process. Right. In every case, we had certain ways of dealing with Batson motions, bringing people up to the sidebar, the whole thing. Everybody's aware of Batson when you're in trial and selecting a jury. Right. But what I'm saying is the comments the government points to, I think, are read most appropriately as saying, I'm not saying these prosecutors are bad people, but I think they did the wrong thing in this case because they struck this juror for an impermissible reason. Well, I don't quite read his comments like that. Well, Your Honor, I disagree. But in the end, I think, after Atlantis, it's really irrelevant because what really matters is the district court had to look at the record before it and make a stage three determination. But the statements of the attorney, that's part of the record. It's part of the – I mean, certainly a counsel can offer advice by, here's why I think there are – there's a Batson violation here. But I don't think that that changes the record. The record is what is – what are the circumstances surrounding the strike? What are the government's proffered reasons for the strike? And as a district judge, I have to look at that and say, is there evidence of purposeful discrimination here? And I think that's it. Thank you, counsel. I think we have it. U.S. v. Newhouse will be submitted. We'll take up Globeville Incorporated v. Element Spirits.
judges: Wardlaw, Paez, Rawlinson